**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 11-23786-CIV-SIMONTON**
<u>**CONSENT CASE**</u>

**OHIO NATIONAL LIFE ASSURANCE**
**CORPORATION,**

       **Plaintiff,**

**v.**

**LIZZETTE JONES, ANDREA CAROLINE**
**JONES, STEPHEN ALEXANDER JONES,**
**MICHELLE MARIE BROWN, BETSY**
**DIAZ, EDWARD JONES and**
**FORETHOUGHT CAPITAL FUNDING, INC.,**

       **Defendants.**

_____/

<u>**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

      Presently pending before the Court is a Motion for Summary Judgment filed by

Defendants Michelle Brown, Stephen Jones and Andrea Jones (DE # 79).  This case has

been referred to the undersigned Magistrate Judge based on the consent of the parties,

pursuant to 28 U.S.C. § 636(c) (DE # 80, 81).  Having thoroughly reviewed the record and,

for the reasons stated herein, Defendants' Motion for Summary Judgment is granted.

    I.      <u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

      Plaintiff Ohio National Life Assurance Corporation initiated this interpleader

action pursuant to Federal Rule of Civil Procedure 22 and 28 U.S.C. sections 1335, 2361,

and 1132(a)(3), to determine the distribution of proceeds from a life insurance policy

held by the decedent, Robert L. Jones.  (DE # 1).  Plaintiff named as potential claimants

Lizzette Jones, Michelle Brown, Stephen Jones, Andrea Jones, Betsy Diaz, Edward

Jones and Forethought Capital Funding, Inc.  (*Id.*).  The primary beneficiary under the

policy when Robert L. Jones died on June 30, 2011, was his wife, Betsy Diaz ("Diaz"), with Edward Jones named a contingent beneficiary. (DE # 1, ¶¶12, 14). Plaintiff alleged that between July 12 and 22, 2011, Diaz and the decedent's children from his marriage to Lizzette Jones, Defendants Michelle Brown, Stephen Jones and Andrea Jones (hereafter referred to as "Defendants"),[1] each filed a claim for the proceeds of the policy. (DE # 1, ¶¶15, 17-19). In addition, Forethought Capital Funding, Inc. ("Forethought"), filed with Plaintiff an assignment from Diaz and claimed a right to $2,293.00 from the policy. (DE # 1, ¶16).

Plaintiff served the potential claimants with summons and the Complaint. Defendants and Diaz filed Answers with affirmative defenses (DE # 19, 20, 21 and 30), Lizzette Jones filed an Answer (DE # 10) and Forethought and Edward Jones failed to respond. Defendants Michelle Brown, Stephen Jones and Andrea Jones each asserted the following affirmative defenses: (1) Illegality of Changes to Policy – Changes Are Void and Unenforceable; (2) Equitable Estoppel and Waiver as Against Ohio National and Defendant, Betsy Diaz (Defendants argue that Plaintiff and Betsy Diaz should be equitably estopped from asserting any rights or defenses against the Defendants based on their improper conduct); and (3) Breach of Implied Covenant of Good Faith and Fair Dealing against Plaintiff. (*See, e.g.,* DE # 21, pp. 3-6).

Diaz asserted the following affirmative defenses: (1) that she was the actual beneficiary of the policy at the time of death, and thus entitled to recover the policy proceeds in accordance with the terms of the policy; (2) that the decedent was the owner

---

[1]For ease of reference, interpleader Defendant Diaz is referred to as "Diaz" and interpleader Defendants Michelle Brown, Stephen Jones and Andrea Jones are referred to as "Defendants."

of the policy, the policy was on his life, and he was paying the policy premiums, and thus he had the right to change beneficiaries; (3) that any claim that the decedent breached some duty or obligation must be brought as a claim against the estate of the decedent, and are not valid claims on the policy; (4) that there were no minor children at the time the decedent changed beneficiaries, and thus no longer any legal basis to restrict his right to change beneficiaries; (5) that the claims of the other defendants are limited to the extent of their insurable interest, which cannot exceed the amount of unpaid child support; and (6) that the only parties in interest are residents of the State of Florida, and diversity jurisdiction does not exist.  (DE # 30, pp. 2-3).

Defendant Lizzette Jones filed a *pro se* Answer in which she disclaimed her own interest, requesting that the Court "settle this interpleader in favor of Michelle Marie (Jones) Brown, Andrea Caroline Jones and Stephen Jones."  (DE # 10, ¶24.C.),

Defendants Forethought and Edward Jones failed to respond to the interpleader Complaint.  The Clerk of Court entered a default against Edward Jones on January 25, 2012 (DE # 42) and against Forethought on January 30, 2012 (DE # 46).  On January 30, 2012, the Honorable Cecilia Altonaga ordered Plaintiff to file a motion for default judgment as to Forethought on or before February 10, 2012, but Plaintiff never filed such a motion.  (DE # 47).

On February 23, 2012, Plaintiff filed a Motion for Leave to Pay Money into the Registry of the Court and for Discharge (DE # 68).  That motion sought an order allowing Plaintiff to deposit $206,535.31 into the registry of the Court and discharging the Plaintiff from any further liability in these proceedings and under the policy.  (DE # 68, p. 2).  The motion further provided that, "counsel for the Defendants has indicated that the Defendants will not oppose the motion."  (*Id.* at ¶4).  At the time, Defendant Diaz was *pro*

3

*se* and though Plaintiff served her with a copy, Plaintiff made no reference to her

position on the motion.

On February 28, 2012, the Court entered an Order granting Plaintiff's motion.  (DE

# 69).  After concluding that there were adverse claimants to a single fund and that

Plaintiff was an uninterested stakeholder in the proceeds of the Policy, the Court

determined that

> [T]he first two jurisdictional requirements of the federal interpleader
> statute, 28 U.S.C. section 1335, have been satisfied: the amount of the
> policy proceeds is $200,000.00, and there exists diversity of citizenship by
> at least two adverse claimants. (See Compl. 1–2 (Defendant, Forethought
> Capital Funding, Inc., is a foreign corporation with a principal place of
> business in Indiana; all other Defendants are residents of Florida)).

(DE # 69, p. 3).  The Court further ordered Plaintiff to deposit the proceeds of the policy

in the registry of the court.  Upon deposit of the funds, the court ordered that Plaintiff

would be "discharged from any further liability under the policy and in this proceeding."

(*Id.* at p. 4).  Plaintiff deposited $207,003.38 with the court on March 6, 2012 (DE # 70).

**A.**   **Pending Motion for Summary Judgment**

On June 22, 2012, Defendants Michelle Brown, Stephen Jones and Andrea Jones

filed a motion for summary judgment.  The motion asserts that the affirmative defenses

raised by Diaz are insufficient or not valid and seeks an award of summary judgment in

their favor against Diaz on those claims.  (*See, e.g.,* DE # 79, p. 13).  While Diaz posits

that Defendants do not directly address or seek relief on their own affirmative defenses

(DE # 85, ¶14), the Court finds that Defendants have explicitly and implicitly sought relief

on their own affirmative defenses.  Defendants state in their papers that they are entitled

to summary judgment in their favor and to receive the $200,000 death benefit from the

policy.  (*See, e.g.,* DE # 79, p. 8 ("[T]he Court should find that the Marital Settlement

Agreement in this case controls the disposition of the proceeds and that summary judgment is appropriate in favor of the Movants and against Betsy Diaz, Edward Jones and Forethought Capital Funding, Inc. The Movants are entitled to the $200,000.00 death benefit from the Policy pursuant to the terms of the Marital Settlement Agreement....")). Moreover, in the course of addressing Diaz's affirmative defenses, Defendants have implicitly sought summary judgment on their first affirmative defense - that Robert Jones's attempt to name Diaz as the beneficiary was void and unenforceable.[2]  (DE # 19, p. 3).  Thus, the Court considers Defendants' motion as one seeking summary judgment against the other interpleader Defendants and in their favor on their affirmative Defenses.

**B.    Interpleader Procedure**

The parties have each filed an "Answer" and have set forth various "Affirmative Defenses."  In an action for interpleader, however, a court may consider an answer filed by a defendant as that defendant's statement of claim to the interpleaded funds.  *Central Bank of Tampa v. U. S.*, 838 F.Supp. 564, 566 (M.D. Fla. 1993).  Here, the parties' affirmative defenses are not true affirmative defenses, but reasons why they are entitled to the funds and/or why another interpleader defendant is not entitled to the funds. *Bluewater Trading, LLC v. Willimar USA, Inc.*, No. 07-v-61284, 2008 WL 4179861, *2 (S.D. Fla. Sept. 9, 2008)(a true affirmative defense is "one that admits to the complaint, but avoids liability, wholly, or partly, by new allegations of excuse, justification or other negating matters.").  Because the Court views both parties' "Answers" and "Affirmative

---

[2]Based on the Court's conclusion that the Defendants are entitled to summary judgment on their first affirmative defense (DE # 19, p. 3), it is unnecessary to reach the other bases upon which Defendants claim entitlement to the proceeds of the policy.

Defenses" as their statements of claim to the interpleaded funds, the Defendants' Motion for Summary Judgment, though directed at Diaz's Affirmative Defenses, is more aptly described as a request for summary judgment on their claim for the interpleaded funds. The Court will, however, address the parties arguments the same as the parties, *i.e.*, by each affirmative defense.

II.     <u>STANDARD FOR SUMMARY JUDGMENT</u>

Rule 56 of the Federal Rules of Civil Procedure authorizes entry of summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).  The movant has satisfied its burden of proof if, "after adequate time for discovery," the non-movant has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is an integral part of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action.  *Celotex Corp. v. Catrett*, *supra*.

When the motion is filed by a defendant and addresses the adequacy of plaintiff's causes of action, the defendant's "burden is not to produce evidence negating the existence of material facts; rather, the burden is to 'point out the absence of evidence supporting the nonmoving party's case.'" *Compania de Elaborados de Café v. Cardinal Capital Mgmt., Inc.*, 401 F. Supp. 2d 1270, 1274 (S.D. Fla. 2003) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)); *see also Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

Assuming the moving defendant has met its initial burden, the non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must support its assertion "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or . . . by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  A party can object to the use of the material cited on the ground that it "cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."  *Anderson*, 477 U.S. at 252.  There must be a *genuine* factual dispute sufficient to permit a *reasonable* jury to return a verdict for the non-movant; and, "(f)or factual issues to be considered genuine, they must have a real basis in the record."  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993)).  "For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

While the Court must view all of the evidence and any inferences arising therefrom in the light most favorable to the non-movant, it is nevertheless insufficient for the non-movant "to state what the evidence at trial will demonstrate" without producing actual "evidence to refute the factual claims contained in the motion for summary judgment."  *Schvaneveldt v. Mastec N. Am., Inc.*, 306 F. Supp. 2d 1177, 1181 (S.D. Fla. 2004) (citing *Hairston*, 9 F.3d at 918).  Nor is the Court "required to 'scour the record to

determine whether there exists a genuine issue of material fact to preclude summary judgment.'" *Cardinal Capital*, 401 F. Supp. 2d at 1282 n.5, quoting *L.S. Heath & Son, Inc. v. AT&T Info. Sys. Inc.*, 9 F.3d 561, 567 (7th Cir. 1993).

    III.    <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

        A.    <u>The Undisputed Material Facts</u>

In considering Defendants' Motion for Summary Judgment, the Court considers all of the evidence in the light most favorable to the non-movant, Diaz.  The Court notes, however, that Diaz failed to comply with Federal and Local Rules, which required her to respond directly to the Defendants' statement of facts.  *See, e.g.,* Local Rule 56.1(a). Instead, Diaz submitted her own affidavit that only contradicts one "fact" asserted by Defendants - the amount of child support the decedent purportedly owed as of August 5, 2011.[3]  (DE # 84, ¶12; Ex. C).  Diaz's documents suggest the decedent owed $30,516.31, while the Defendants' documents identify the amount owed as $130,516.31.  (DE # 86, Ex. D).  As set forth below, this factual dispute does not involve a material issue as the amount of child support the decedent owed in 2011 is of no consequence to the Court's ruling.  Moreover, Diaz's failure to respond to the Defendants' statement of undisputed facts deems those facts admitted.  S.D. Fla. L.R. 56.1(b).

Lizzette Jones and Robert L. Jones were married on June 11, 1983, and had three children: Michelle Marie Jones[4] born August 20, 1984; Andrea Caroline Jones born

---

[3]Diaz's affidavit also contains additional facts that were not submitted by Defendants, but they do not contradict any facts, but merely provide context for the factual background of this case.  *See, e.g.,* Diaz Aff., (DE # 84, ¶12) (explaining that Diaz requested financing from Forethought through a funeral home to cover the costs of the decedent's funeral.).

[4]Now known as Michelle Marie Brown.

October 5, 1986; and Stephen Alexander Jones born May 4, 1992.  (Michelle Brown

Affidavit ("Aff."), DE # 79-2 at ¶1; DE # 79-3, p. 1).  At the time they were married, Robert

L. Jones had a son, Edward Jones, from a prior relationship.  (Brown Aff., DE # 79-2 at

¶2).  Lizzette Jones and Robert L. Jones ceased cohabiting as husband and wife in

November 1991.  (DE # 79-3, p. 1).   On February 22, 1993, Lizzette Jones and Robert L.

Jones entered into a Marital Settlement Agreement in case No. 93-04328-(07) in the

Circuit Court for the Eleventh Judicial Circuit, Dade County Florida, Family Division.

(*Id.*).  Paragraph 5 of the Marital Settlement Agreement provides as follows:

> 5.    LIFE INSURANCE:
>
> The Husband will maintain the terms of the life insurance policy with
> Northwestern National Life in the amount of Two Hundred Thousand
> Dollars, naming the Wife as primary irrevocable beneficiary and the minor
> children as secondary irrevocable beneficiaries thereunder and will
> provide the Wife with any documentation received concerning said policy.

(DE # 79-3, p. 6) (emphasis added).  Paragraphs 12 and 18 of the Marital Settlement

Agreement provide that it cannot be modified unless changes are made in writing and

executed by both parties with the same formality as the Marital Settlement Agreement.

(*Id.* at ¶¶12, 18).  The family court entered a Final Judgment of Dissolution on April 21,

1993, which incorporated by reference the Marital Settlement Agreement.  (DE # 79-4, ¶2).

Betsy Diaz met Robert L. Jones in 1998 and the two were married on March 19,

2005.  (Diaz Aff., DE # 84, ¶3).

After learning that Robert L. Jones had failed to maintain the Life Insurance Policy

as required by the Final Judgment of Dissolution, Lizzette Jones filed a Motion for

Contempt on September 18, 2006, with the family court in case No. 93-04328.  (DE # 79-

5). In that motion, Lizzette Jones requested that the family court enforce paragraph 5 of

the Marital Settlement Agreement and order Robert L. Jones to renew or take out

**9**

replacement life insurance policy under the same terms as stated in the Marital Settlement Agreement. (*Id.* at ¶2).

On July 31, 2007, Robert L. Jones applied for a Life Insurance Policy with Ohio National Life Assurance Corporation. (DE # 79-6). In that application, Robert L. Jones identified Michelle Jones, Andrea Jones and Stephen Jones as Primary Beneficiaries and Lizzette Jones as the Contingent Beneficiary. (*Id.* at p. 2).

On September 19, 2007, family court Judge Ronald Dresnick ruled on Lizzette Jones's "motion to enforce life insurance." (DE # 79-7). Judge Dresnick ordered Robert L. Jones to "get insurance by October 17, 2007[,]" or face sanctions including contempt of court. (DE # 79-7).

On September 27, 2007, Ohio National Life Assurance Company issued Policy Number 6835992, which was a "Renewable Term Life" insurance policy identifying Robert L. Jones as "Owner" and the "Insured." (DE # 79-8). The face amount of the policy was $200,000. The policy identified Michelle Jones, Andrea Jones and Stephen Jones as Primary Beneficiaries and Lizzette Jones as the Contingent Beneficiary. (Diaz Aff., (DE # 84, ¶6)). At the time the policy was issued, Michelle Brown was twenty three years old, Andrea Jones was twenty one years old and Stephen Jones was fifteen years old.

On October 17, 2007, Judge Dresnick entered another order in the "Life Insurance Enforcement Case[,]" which provides:

> Mr. Robert Jones to request from Ohio National Life Assurance Corporation to provide Lizzette Jones with duplicate notices regarding Policy No. 6835992 on any premium, change or cancellation involving such policy, this action to prevent Mr. Robert Jones from cancelling, changing or making any amendment to the life insurance policy.

(DE # 79-9).

On January 10, 2011, Robert L. Jones filed a change of ownership and change of beneficiary form with Ohio National.[5]  (DE # 84, ¶8 and Ex. A).  He requested that Ohio National change Policy Number 6835992 to reflect Betsy Diaz as the "Owner" and primary beneficiary and Edward Jones as the contingent beneficiary, removing Lizzette Jones, Michelle Jones, Andrea Jones and Stephen Jones as beneficiaries.  (*Id.* at Ex. A).  Ohio National effectuated and recorded those changes on February 10, 2011.  (DE # 79-11).

On February 24, 2011, Gary Leone, the Agent who had originally submitted Robert L. Jones' application to Ohio National, faxed a copy of the Family Court Order dated October 17, 2007 to Ohio National and requested that they notify Lizzette Jones of the changes to Policy Number 6835992.  (DE # 79-12).

On March 9, 2011, Betsy Diaz requested a change to Policy Number 6835992.  She asked Ohio National to change the named "Owner" of the policy from Betsy Diaz to Robert L. Jones.  (DE # 79-13).  Ohio National gave notice to Robert L. Jones on March 21, 2011, that the Owner of the policy had been changed.  (DE # 79-14).

On April 4, 2011, Lizzette Jones filed an Emergency Motion for Contempt against Robert L. Jones requesting that the Family Court enforce the previous orders and Marital Settlement Agreement.  (DE # 79-15).  On June 30, 2011, Robert L. Jones died before the Family Court ruled on Lizzette Jones' emergency motion.  (DE # 84, ¶9).

On July 12, 2011, Betsy Diaz filed a claim with Ohio National for the proceeds of the policy.  (Diaz Aff., DE # 84, ¶10; Brown Aff., DE # 79-2, ¶21).  Nine days later, on July

---

[5]Defendants suggest that Diaz requested the change (DE # 79-1, ¶17) while Diaz maintains that Robert L. Jones requested the change (DE # 84, ¶8).  The party that requested the change is immaterial to the instant analysis.

21, 2011, Michelle Brown filed a claim with Ohio National for the proceeds of the policy. (Brown Aff., DE # 79-2, ¶22).  On July 22, 2011, Andrea Jones and Stephen Jones each filed a claim with Ohio National for the proceeds of the policy.  (*Id.* at ¶ 23).

On July 7, 2011, Diaz "irrevocably assign[ed], set over and transfer[ed] unto Forethought [ ] the sum of $2,293.00 which is to be paid from the benefits" of Policy No. 6835992.  (DE # 84, Ex. B).  The total assignment amount was intended to equal the total sum of the funeral/cemetery costs provided by Caballero Rivero Woodlawn Funeral Home.  (*Id.*)

Ohio National is a citizen of the state of Ohio, Forethought is a citizen of the State of Indiana and the remaining parties are all citizens of the State of Florida.  (DE # 1, ¶¶2-8).

### B.   Legal Analysis

The Court will address each of Defendants' arguments for summary judgment on Diaz's affirmative defenses *seriatim*.

### 1.   The Court Has Subject Matter Jurisdiction

Defendants first move for summary judgment on Diaz's sixth affirmative defense - that the court lacks subject matter jurisdiction because all of the parties in interest are "residents of the State of Florida."  (DE # 30, ¶30; DE # 79, p. 5).  Defendants argue that the diversity exists because at the time of filing the interpleader complaint, "Plaintiff was an Ohio corporation" and "none of the Defendants is a citizen of Ohio."  (DE # 79, pp. 5-6).  In response, Diaz maintains that "[d]iversity is based entirely upon the defaulted defendant, [Forethought.]"  (DE # 85, p. 6).  Because Forethought merely "stands in the shoes" of Diaz as an assignee of $2,293.00 of the policy's proceeds, Diaz contends that Forethought has no independent right or status and should not be considered for

12

purposes of establishing diversity.  (*Id.*).  In reply, Defendants argue that diversity jurisdiction here is not based on Forethought, but on the complete diversity between Plaintiff and the Defendants, none of which are residents of Ohio.

Both parties' arguments miss the mark.  Defendants fail to appreciate the difference between statutory interpleader and rule interpleader and Diaz failed to establish that the Court should ignore the citizenship of Forethought.  In federal courts, there are two interpleader remedies: "statutory interpleader under [28 U.S.C. §] 1335 and traditional equitable interpleader governed by Rule 22 [of the Federal Rules of Civil Procedure]."  *Lummis v. White*, 629 F.2d 397, 400 (5th Cir. 1980), rev'd on other grounds by *Cory v. White*, 457 U.S. 85 (1982).[6]  The difference is that § 1335 interpleader has more liberal procedural rules.  *Ohio Nat. Life Assur. Corp. v. Langkau ex rel. Estate of Langkau*, 353 F. App'x. 244, 248 (11th Cir. 2009).   Rule 22 requires complete diversity between the stakeholder and the claimants.  *Id.*  In contrast, § 1335 requires minimal diversity among the claimants, that is, at least one claimant must be of diverse citizenship from another claimant.  *Id.* (citing *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967)).

Plaintiff Ohio National commenced this action pursuant to both 28 U.S.C. §1335 and Rule 22.  (DE # 1, p. 1).  The Court, however, as noted in its prior Order, deemed this a statutory interpleader action pursuant to §1335.  (DE # 69).  Moreover, the Court concluded that minimal diversity exists here because "Defendant, Forethought Capital Funding, Inc., is a foreign corporation with a principal place of business in Indiana; [and]

---

[6]On November 3, 1981, the Eleventh Circuit held that the decisions of the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to close of business on that date, are binding as precedent on all federal courts within the Eleventh Circuit.  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981).

all other Defendants are residents of Florida."  (DE # 69, p. 3).   Thus, Defendants'

argument that diversity exists here because the stakeholder is diverse from all of the

Defendants, an argument only relevant to rule interpleader, is of no moment to this

statutory interpleader action.[7]

Defendants, however, are still entitled to summary judgment on Diaz's sixth

affirmative defense because contrary to Diaz's assertion, minimal diversity exists in this

statutory interpleader action.[8]  Diaz posits that complete diversity between claimants is

lacking here because Forethought "has no independent right or status" to the proceeds

of the policy and merely "stands in the shoes" of Diaz.  (DE # 85).  In essence, Diaz

argues that Forethought is a "nominal party" whose citizenship this Court can ignore.

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61 (1980) (For purposes of a diversity

jurisdiction analysis, the citizenship of "nominal" parties need not be considered.).

While the Supreme Court has held that "a federal court must disregard nominal or

formal parties and rest jurisdiction only upon the citizenship of real parties to the

controversy," the undersigned has found no authority, and Diaz cites none in her

response brief, holding that an assignee such as Forethought is merely a nominal party.

Rather, the evidence here indicates that Forethought has asserted an independent claim

to Ohio National for a portion of the proceeds of the policy.  Though this claim originated

---

[7]Even assuming, however, that the predecessor judge assigned to this case had
erred in finding subject matter jurisdiction pursuant to § 1335, Defendants correctly
argue that diversity jurisdiction exists here under Rule 22, and the same result would be
realized if this case proceeded on that basis.

[8]Because the Court evaluates subject matter jurisdiction at the time the action
was filed, the entry of a Clerk's default against Forethought does not alter the
conclusion here.  Diversity of citizenship is assessed and determined at the time the
action is filed. *Freeport–McMoran, Inc. v. L.N. Energy, Inc.*, 498 U.S. 426, 428 (1991).

in an assignment from Diaz, that is not the same as saying that Forethought has no independent claim to the Policy proceeds. Diaz's suggestion is contradicted by the express language of her assignment to Forethought, which provides that she "irrevocably assign[ed], set over and transfer[ed] unto Forethought [ ]" a finite interest in the proceeds of the insurance policy. (DE # 84, p. 10). Accordingly, Forethought is not a "nominal party" and the Court will consider Forethought's citizenship in concluding that minimal diversity exists under §1335. Summary judgment is therefore appropriate in favor of Defendants on Diaz's sixth affirmative defense.

   2.   **The Attempt by Robert L. Jones to Name Diaz a Beneficiary Was Void *Ab Initio*.**

   Defendants next move for summary judgment on Diaz's first and second affirmative defenses because Robert L. Jones had no legal right to change the ownership or beneficiaries of Policy No. 6835992.[9] (DE # 79, pp. 6-11). Defendants argue that the Marital Settlement Agreement as well as the subsequent family court orders control the disposition of the proceeds and require the conclusion that Robert Jones had no legal right to change the beneficiaries of the policy. In response, Diaz asserts that the policy of insurance is a valid contract that must be enforced according to its terms. (DE # 85, p. 7). She further maintains that the family court never required Robert Jones to maintain a life insurance policy for the benefit of his children for the remainder of his life. (*Id.* at p. 8). Diaz argues that the obligation lasted only as long as the children were minors. (DE # 85, ¶27). Diaz cites a number of decisions from the Eleventh Circuit and various state courts in Florida in support of her position. (DE # 85, pp. 11-18).

---

   [9]Implicit in this request is that Defendants seek summary judgment in their favor on their own first affirmative defense.

The parties agree, and so does the Court, that Florida law governs this dispute. Despite Diaz's arguments to the contrary, the relevant Eleventh Circuit and Florida state court decisions all support the Defendants' position in this case.  Those cases provide that a divorce decree which orders the named insured to maintain an insurance policy and designate another as an irrevocable beneficiary is analogous to a gift, thereby divesting the decedent of ownership interest in the life insurance policy and creating in the beneficiary an indefeasible interest in the proceeds.  *Prudential Ins. Co. of America v. Boyd*, 781 F.2d 1494 (11th Cir. 1986); *Pensyl v. Moore*, 415 So. 2d 771 (Fla. Dist. Ct. App. 1982); *Dixon v. Dixon*, 184 So. 2d 478 (Fla. Dist. Ct. App. 1966): *see also Cooper v. Muccitelli*, 682 So. 2d 77, 79 n.1 (Fla. 1996) ("a settlement agreement that specifically requires one of the parties to maintain a named individual as beneficiary will control the disposition of proceeds upon notice to the insurer").

The Eleventh Circuit's decision in *Prudential Insurance Company of America* involved factual circumstances remarkably similar to the instant case.  In that case, the husband and wife had two children during their marriage, which ended by divorce decree in 1975.  Paragraph five of that divorce decree provided as follows:

> [husband] shall arrange with the carrier of his existing life insurance protection for designation of the aforesaid minor children as irrevocable beneficiaries of such policy evidencing said protection; and he shall also be liable for, and pay, unusual medical, dental or orthodontal expenses of said minor children.

781 F.2d at 1495.  After the divorce, the husband remarried and, contrary to the terms of the divorce decree, named his second wife as beneficiary of the life insurance policy.  *Id.* After both the second wife and the ex-wife on behalf of the children made claims to the benefits of the policy, the insurance company instituted an interpleader action in the Southern District of Florida.  *Id.*  The district court awarded summary judgment and

16

disbursement of the funds to the ex-wife and the second wife appealed to the Eleventh Circuit.  *Id.* at 1496.

The Eleventh Circuit first noted that the second wife failed to introduce any evidence to controvert the fact that her husband was "legally bound" to name his children as "irrevocable beneficiaries" of his life insurance policy.  781 F.2d at 1496.  The court noted that the state courts were in accord on this issue finding:

> Florida courts have consistently construed provisions similar to this one to require the insured to name the person so designated by the divorce decree to be the beneficiary of the life insurance policy, and to nullify attempts to name another person as beneficiary.

*Id.* at 1496-97(citing *Dixon v. Dixon*, 184 So. 2d 478 (Fla. Dist. Ct. App. 1966)).  The court explained that under Florida law:

> [the husband] was divested of his ownership of the proceeds of his life insurance policy with Prudential.  The decree created an indefeasible interest in the proceeds of this policy in the two minor children by [the husband's] first marriage.

*Id.* at 1497.  The court then held that the district court correctly ruled that the husband was legally bound to name the children of his first marriage to be the beneficiaries of his life insurance policy and upheld the disbursement of the funds to his children.  *Id.*

Here, the marital settlement agreement entered into by Robert L. Jones required him to name his ex-wife and their children as "irrevocable beneficiaries" of his life insurance policy.  (DE # 79-3, p. 6).  As in *Prudential Insurance Company of America* and *Dixon,* the Joneses' Final Judgment of Dissolution, which incorporated by reference the Marital Settlement Agreement, created an indefeasible interest in the proceeds of his insurance policy in Lizzette Jones, Michelle Jones, Andrea Jones and Stephen Jones.  *Prudential Ins. Co. of America*, 781 F.2d at 1497; *Dixon*, 184 So. 2d 478.  While the children's interest arguably arose upon entry of the judgment of dissolution, Robert L.

17

Jones's act of purchasing a policy as required by the family court in 2007 created an indefeasible interest in the proceeds of Policy Number 6835992 in Michelle Jones, Andrea Jones and Stephen Jones.  As a result, Robert L. Jones was divested of his ownership in the interest of the proceeds and his attempt to name Diaz as the beneficiary was a nullity.  *Id.*

Diaz asserts a number of incorrect and unsubstantiated arguments in her response brief, only a few of which merit discussion here.  Diaz makes much of the fact that the children were minors at the time of the divorce and maintains that Robert L. Jones was only required to name them as beneficiaries until they reached the age of majority.  (DE # 85, ¶30).  Diaz maintains that it is an "extraordinary assertion" that Robert L. Jones would be required to maintain the policy of insurance on behalf of his children for the rest of his life.  (*Id.* at ¶41).  Diaz then argues that because each of the parties here are advancing a different interpretation of the divorce documents, "then such differing interpretations are issues of fact that prevent summary judgment from being entered."  (*Id.* at ¶42).

Diaz is wrong on all accounts.  Her first argument that the obligation to name the children as beneficiaries terminated when they reached the age of majority ignores the plain language of the Marital Settlement Agreement.  Contract law governs the interpretation of settlement agreements.  *Munroe v. U.S. Food Serv.*, 985 So. 2d 654, 655 (Fla. Dist. Ct. App. 2008).   In interpreting a contract, a court is "guided first by the language of the contract itself and where the contract is clear and unambiguous there is no reason to go further."  *Lab. Corp. of Am. v. McKown*, 829 So. 2d 311, 313 (Fla. Dist. Ct. App. 2002).  "Language in a document is ambiguous when it is uncertain in meaning and may be fairly understood in more ways than one and is susceptible of interpretation in

opposite ways." *Barnett v. Destiny Owners Ass'n, Inc.*, 856 So. 2d 1090, 1092 (Fla. Dist.

Ct. App. 2003). "Where the terms are unambiguous, the parties' intent must be discerned

from the four corners of the document." *Dows v. Nike, Inc.*, 846 So. 2d 595, 601 (Fla.

Dist. Ct. App. 2003). "[A]n interpretation which gives a reasonable meaning to all

provisions of a contract is preferred to one which leaves a part useless or inexplicable."

*Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n*, 117 F.3d

1328, 1338 (11th Cir. 1997).

Here the language of the Marital Settlement Agreement is clear and unambiguous.

Paragraph 5 of the Marital Settlement Agreement provides as follows:

> 5.    <u>LIFE INSURANCE:</u>
>
> The Husband will maintain the terms of the life insurance policy with
> Northwestern National Life in the amount of Two Hundred Thousand
> Dollars, naming the Wife as primary <u>irrevocable</u> beneficiary and the minor
> children as secondary <u>irrevocable</u> beneficiaries thereunder and will
> provide the Wife with any documentation received concerning said policy.

(DE # 79-3, p. 6) (emphasis added). Despite Diaz's claims, there is nothing in the

settlement agreement or any of the other "divorce documents" that suggest, much less

expressly provide, that the requirement to maintain the children as beneficiaries

terminated when they all reached the age of eighteen. Instead, the plain language of the

settlement agreement provides that the requirement to name the children as

beneficiaries was "irrevocable." *Id.* The term "irrevocable" is defined as "[u]nalterable;

committed beyond recall," Black's Law Dictionary 848 (8th ed. 2004), or "[i]mpossible to

retract or revoke," The American Heritage College Dictionary 719 (3d ed.1993).

Moreover, as used in this paragraph, the term "minor" is merely an adjective used as a

descriptor for the children. To interpret the term "minor" in the manner suggested by

Diaz is illogical and would completely eviscerate the requirement that Lizzette and the

children were named as "irrevocable" beneficiaries.[10]  Under Diaz's reading of the policy, the term "irrevocable" would be rendered superfluous, in contravention of established rules of contract interpretation.  *Golden Door Jewelry Creations, Inc.*, 117 F.3d at 1338.

Moreover, there is nothing "extraordinary" about a marital settlement agreement that Robert L. Jones entered into <u>voluntarily</u>.  Diaz's suggestion that the divorce court had no authority to require Robert L. Jones to maintain a life insurance policy for the remainder of his life ignores the undisputed circumstances of his divorce.  Robert entered into the settlement agreement, with the full advice of counsel, "freely and voluntarily, intending to be bound by it."  (DE # 79-3, p. 8).  Pursuant to its terms, he agreed to "irrevocably" name his ex-wife and children as the beneficiaries under the policy.  (DE # 79-3, p. 6).  The family court then incorporated that agreement into the final dissolution of marriage.  This is not a case where a court overreached its powers or awarded improper extraordinary relief as suggested by Diaz.  Rather, the family court merely entered an order formally requiring what Robert L. Jones agreed to do.

Thus, the settlement agreement is unambiguous and Diaz's suggestion that an issue of fact exists here must be rejected.  *See Land O'Sun Realty Ltd. v. REWJB Gas Inv.*, 685 So. 2d 870, 872 n. 3 (Fla. Dist. Ct. App. 1996) ("Contract interpretation is for the court as a matter of law, rather than the trier of fact, only when the agreement is totally unambiguous, or when any ambiguity may be resolved by applying the rules of construction to situations in which the parol evidence of the parties' intentions is

---

[10]Diaz's argument also entirely ignores that the settlement agreement also required Robert L. Jones to name Lizzette Jones as an irrevocable beneficiary, which has nothing to with the ages of the children.  Moreover, at the time Judge Dresnick issued his Order enforcing the agreement and requiring Robert L. Jones to obtain insurance, both Michelle Brown and Andrea Jones were adults.  Following this Order, the subject policy was obtained.

undisputed or non-existent"). By operation of Florida law, Robert L. Jones created an indefeasible interest in the proceeds of insurance Policy Number 6835992 in Michelle Jones, Andrea Jones and Stephen Jones. *Prudential Ins. Co. of America*, 781 F.2d at 1497; *Dixon*, 184 So. 2d 478. Robert L. Jones was therefore divested of his ownership in the interest of the proceeds of that policy and his attempt to name Diaz as the beneficiary was void *ab initio*. *Id*. Accordingly, the Defendants are entitled to summary judgment against Diaz on her first and second affirmative defenses and in their own favor on their first affirmative defense.

### 3.   This Interpleader Action is a Proper Forum to Resolve the Parties' Claims

In her third affirmative defense, Diaz claims that the Defendants' claims to the proceeds of the policy should have been brought against Robert L. Jones's Estate, not against the policy itself. (DE # 79, p. 12). Diaz failed to address this argument in her response brief. As the cases cited above make clear, *see, e.g., Prudential Insurance*, an interpleader action is a proper forum to resolving the claims to Robert L. Johnson's life insurance policy. *See also* Fla. Stat. §733.808(4) (Proceeds of life insurance, payable to an individual beneficiary, do not pass through the estate of the deceased.). The Defendants are therefore entitled to summary judgment on Diaz's third affirmative defense.

### 4.   The Age of the Decedent's Children is Irrelevant

Diaz's Fourth Affirmative Defense provides:

At the time that decedent ROBERT JONES changed the beneficiaries of the policy, there were no longer any minor children, and thus there was no longer any legal basis for any restrictions on his right or ability to change the beneficiaries of the policy.

(DE # 30, ¶28). As discussed above, that the children were no longer minors is irrelevant

to Robert L. Jones's right or ability to change the beneficiaries of his insurance policy. Robert L. Jones was divested of his ownership interest in the proceeds of insurance Policy Number 6835992 when he created an indefeasible interest in the proceeds of that policy in Michelle Jones, Andrea Jones and Stephen Jones.  This occurred in 2007 when he applied for and obtained Policy Number 6835992 from Plaintiff.  By operation of law, his attempt to change the beneficiary to Diaz in 2011 after his children reached the age of majority was void *ab initio*.  (*See* section III.B.2., above). Thus, the Defendants are entitled to summary judgment on Diaz's fourth affirmative defense.

> 5.    Michelle Jones, Andrea Jones and Stephen Jones's Claims are not Limited to the Amount of their Insurable Interest

For her fifth affirmative defense, Diaz suggests that the claims of Michelle Brown, Andrea Jones and Stephen Jones are limited to the amount of their insurable interest, which is at most the amount of unpaid child support.  (DE # 30, ¶29).  She also notes in her response brief that "an order for life insurance [in connection with a divorce] is allowable only to protect and secure a child support award."  (DE # 85, ¶33).  At a minimum, Diaz has confused the present situation with one where a Court orders life insurance to secure a child support award.  Here, however, Robert L. Jones voluntarily entered into a settlement agreement whereby he agreed to name his children as irrevocable beneficiaries under his life insurance policy.  (DE # 79-3, p. 6).  There is no language in the settlement agreement to suggest that the parties intended the life insurance to protect an award of child support.  Nor is there any evidence before the Court to suggest that was Lizzette and Robert Jones's intent.  Accordingly, the Defendants are entitled to summary judgment on the fifth affirmative defense as well.

22

IV.    **CONCLUSION**

In sum, based on the undisputed material facts, Defendants Michelle Brown, Stephen Jones and Andrea Jones have established as a matter of law that they are entitled to the proceeds of the policy and that the claim of Diaz is not valid.  In addition, Defendant Lizzette Jones has disclaimed any interest and Defendants Edward Jones and Forethought have defaulted.  Therefore, for the reasons set forth above, it is

**ORDERED AND ADJUDGED** that the Motion for Summary Judgment filed by Defendants Michelle Brown, Stephen Jones and Andrea Jones (DE # 79) is **GRANTED**. Defendants shall file a proposed Final Judgment with the Court following entry of this Order.

**DONE AND ORDERED** in chambers, in Miami, Florida, on May 7, 2013.

_Andrea M. Simonton_
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:
Counsel of Record and pro se parties